CASE NO. 3:21-cv-04597-WHO

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

In re EVANDER FRANK KANE,

*Debtor*,

CENTENNIAL BANK,
an Arkansas state chartered bank,

*Appellant,*

vs.

EVANDER FRANK KANE

*Appellee.*

On Appeal From The United States Bankruptcy District Court
Case No. 21-50028-SLJ
Honorable Stephen L. Johnson

**APPELLANT CENTENNIAL BANK'S REPLY BRIEF**

John A. Anthony, FL Bar No: 0731013
Andrew Ghekas, FL Bar No: 119169
ANTHONY & PARTNERS, LLC
100 S. Ashley Drive, Suite 1600
Tampa, Florida  33602
Tel: 813-273-5616
janthony@anthonyandpartners.com
aghekas@anthonyandpartners.com

Peter C. Califano, SBN 129043
COOPER, WHITE & COOPER LLP
201 California Street, 17th Floor
San Francisco, California 94111
Telephone:  415.433.1900
pcalifano@cwclaw.com

*Attorneys for CENTENNIAL BANK*

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ..................................................................................................................3

    A.    Classification of Consumer Debt Where the Facts Are Undisputed is a Question of Law That is Reviewed <u>De Novo</u> .............3

    B.    The Debtor Fails to Support His Own Misrepresentations ...................5

    C.    The Bankruptcy Court's Ruling is Erroneous .......................................8

    D.    The <u>Garcia</u> Opinion is Inapposite and Unhelpful ...............................11

    E.    The Debtor Fails to Address His Own Burden of Proof .....................12

III. CONCLUSION .............................................................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................................14

# **TABLE OF AUTHORITIES**

## **CASES**

Aspen Skiing Co. v. Cherrett (In re Cherrett)
    873 F.3d 1060 (9th Cir. 2017) ..................................................................................4

Bennett v. Lukens
    131 B.R. 427 (S.D. Ind. 1991) ...................................................................................4

Curtis v. Propel Property Tax Funding, LLC
    915 F.3d 234 (4th Cir. 2019) ............................................................................... 10, 11

In re Booth
    858 F.2d 1051 (5th Cir. 1988) ...................................................................................4

In re Ferreria
    549 B.R. 232 (Bankr. E.D. Cal. 2016) .....................................................................12

In re Garcia
    606 B.R. 98 (Bankr. D.N.M. 2019) ..........................................................................11

In re Liegey
    No.: 1:09-bk-00661 MDF, 2009 WL 3817902
    (Bankr. M.D. Penn. Nov. 13, 2009) .......................................................................9, 11

In re Whitelock
    122 B.R. 582 (Bankr. D. Utah 1990) ................................................................. 10, 11

IRS v. Westberry (In re Westberry)
    215 F.3d 589 (6th Cir. 2000) .....................................................................................4

Palmer v. Laying
    559 B.R. 746 (D. Colo. 2016)..................................................................................12

Stewart v. United States Tr. (In re Stewart)
    175 F.3d 796 (10th Cir. 1999) ...................................................................................4

<u>U.S. Bank N.A. v. The Village at Lakeridge, LLC</u>
 138 S. Ct. 960 (2018)..................................................................................................3

<u>U.S. v. Hutzell</u>
 217 F.3d 966 (8th Cir. 2000) .....................................................................................6

<u>United States v. Carlson</u>
 900 F.2d 1346 (9th Cir. 1990) ................................................................................8, 9

<u>Victoria v. Greenville Hosp. Corp.</u>
 389 B.R. 250 (M.D. Ala. 2008) ..................................................................................4

<u>Zolg v. Kelly (In re Kelly)</u>
 841 F.2d 908 (9th Cir. 1988) .....................................................................................3

## **STATUTES**

11 U.S.C. § 707(b) ................................................................................................3, 13

11 U.S.C. § 707(b)(2)..................................................................................................13

11 U.S.C. § 707(b)(3)..................................................................................................13

## **RULES**

Fed. R. Bankr. P. 8015(a) ..........................................................................................14

Fed. R. Bankr. P. 8015(g) ..........................................................................................14

## I. **INTRODUCTION**[1]

Evander Frank Kane's (the "Debtor") Responsive Brief addresses almost none of the issues raised in Centennial Bank's ("Centennial") Opening Brief.[2] Instead, it is essentially one large summary of the events that transpired leading up to Centennial's filing of this appeal ("Appeal"). While thirty-four (34) pages in length, only two (2) pages are actually dedicated to "Centennial's Argument on Appeal." The Debtor does not dispute that he checked the box on his Petition thereby stating under oath that his debts were "primarily business debts" or "debts that [the Debtor] incurred to obtain money for a business or investment or through the operation of the business or investment." The Debtor additionally does not dispute that he did not utilize any of the proceeds from the Non-Residential Bank Debt to (i) purchase any real property, (ii) purchase any operating business, (iii) fund any operating business, or (iv) invest in any other business enterprise or investment opportunity. [CB 146, 171-172, 180-181, 182-183]. In the face of such divergent evidence, the Debtor now argues on appeal that "[t]he vast majority of Kane's debts were non-consumer, which does not require a finding that the debt was business-related." [RB

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
[2] References to Centennial's Opening Brief filed by Centennial on September 21, 2021, are to the page number preceded by the letters "OB." References to the Responsive Brief filed by the Debtor on November 11, 2021, are to the page number preceded by the letters "RB."

1

at 2]. But the Debtor ignores the fact that when provided the opportunity to do so, the Debtor failed to identify those debts that "are not consumer debts or business debts." [CB007].

The Debtor's shifting categorization is understandable, as his undisputed purpose in acquiring the majority of his debt at issue was to pay off preexisting personal debt obligations – a purpose the Debtor tacitly agrees is consumer. But despite the Debtor's stated consumer purpose in acquiring the Non-Residential Bank Debt, the Bankruptcy Court needlessly sought to pigeonhole the Debtor's debt obligations into a "grey area" that is neither consumer nor business related. Other than simply re-stating the Bankruptcy Court's order, the Debtor does very little to actually defend it. Instead, clinging to a standard of review not suited for the issues on appeal, the thrust of the Debtor's argument is for this Court to merely accept it. But the Bankruptcy Court lacks discretion to ignore the Debtor's stated purpose and misapply the law.

Centennial respectfully requests that this Court reverse the Bankruptcy Court's Dismissal Order as the Debtor's debts are primarily consumer in nature when analyzed under prevailing Ninth Circuit law.

## II. ARGUMENT

### A. Classification of Consumer Debt Where the Facts Are Undisputed is a Question of Law That is Reviewed De Novo

The Debtor spends a considerable amount of time arguing that "the clear error standard applies to the review of the bankruptcy court's ruling." [RB at 4-7]. So concerned with this Court's de novo review of the Bankruptcy Court's decision, the Debtor spends nearly the same amount of time lobbying for a lesser standard of review than is required as he does actually addressing Centennial's arguments on appeal. In feigned support, the Debtor relies entirely on the Supreme Court's decision in U.S. Bank N.A. v. The Village at Lakeridge, LLC, 138 S. Ct. 960 (2018). Interestingly, U.S. Bank did not deal with or even address in the slightest 11 U.S.C. § 707(b) or what constitutes consumer debt. And other than noting that "[m]ixed questions are not all alike" and therefore "the standard of review for a mixed question all depends – on whether answering it entails primarily legal or factual work," 138 S.Ct. at 967, it has little application to the case at bar.

Indeed, the Debtor ignores the fact that the Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits, or courts therein, have reviewed the very issue before this Court de novo. Specifically, the Ninth Circuit explained that "[s]ince the underlying facts are not disputed, the question is one in which legal issues predominate and is thus subject to de novo review." Zolg v. Kelly (In re Kelly), 841 F.2d 908, 911 (9th Cir. 1988). In fact, Kelly reversed the BAP, which had reversed the Bankruptcy Court –

both on legal grounds and without any deference. Kelly is not an outlier. The Fifth Circuit found that "[t]he classification of debt as consumer or business necessarily involves an initial determination of a legal standard. Consequently, this Court may freely review the lower courts' conclusions." In re Booth, 858 F.2d 1051, 1053 n.5 (5th Cir. 1988). The Sixth Circuit found that whether a debt "should be considered consumer debt … is a question of law, which we review de novo." IRS v. Westberry (In re Westberry), 215 F.3d 589, 590 (6th Cir. 2000). A district court in the Seventh Circuit found that "[w]hether a bankruptcy court correctly classified a debt consumer or commercial is a legal inquiry and subject to a de novo review." Bennett v. Lukens, 131 B.R. 427, 428 (S.D. Ind. 1991). A district court in the Eleventh Circuit reached the same conclusion. Victoria v. Greenville Hosp. Corp., 389 B.R. 250, 254 (M.D. Ala. 2008). And the Tenth Circuit reviews the "legal determination[] de novo" "that debts are 'primarily consumer debts,'" explaining that § 707 was enacted "to broaden and encourage such review in light of the fact many bankruptcy courts were not dismissing abusive consumer petitions." Stewart v. United States Tr. (In re Stewart), 175 F.3d 796, 803 (10th Cir. 1999).

While the Debtor, in passing, cites to the Ninth Circuit's decision in Aspen Skiing Co. v. Cherrett (In re Cherrett), 873 F.3d 1060, 1067 n.3 (9th Cir. 2017), for the proposition that "the purpose of a debt is a factual finding reviewed for clear

4

error", RB at 6, the purpose behind the Debtor's debt is not at issue. Instead, it is whether or not such said debt constitutes consumer debt in light of the stated purpose.

Accordingly, the Bankruptcy Court's decision to deny dismissal of the Debtor's Chapter 7 bankruptcy that consists primarily of consumer debt obligations was predominately a legal one that is subject to de novo review.

**B.     The Debtor Fails to Support His Own Misrepresentations**

The Debtor position is relatively simple: because the Debtor checked "primarily business debts" on the Chapter 7 voluntary petition that somehow elevates automatically the Debtor's claims to being a business debt rather than a consumer debt. [See Dismissal Order at 9 ("Debtor stated under penalty of perjury in his petition that his debts are primarily not consumer debts. So, at a minimum, even under Ferreira's approach Centennial has burden to produce evidence sufficient to create a genuine dispute of material fact whether Debtor's debts are primarily consumer debts.")].

Of course, the Bankruptcy Court seemingly misread the Petition, as the Debtor did more than state under penalty perjury that his debts are primarily not consumer debts. The Debtor stated under penalty of perjury that his debts were "primarily business debts," meaning debts "incurred to obtain money for a business or investment or through the operation of the business or investment." The Debtor left blank the section of his Petition that requested he "[s]tate the type of debts you owe

5

that are not consumer debts **or** business debts." (emphasis added).  But the Debtor's sworn testimony was later debunked by no other than the Debtor himself. [See OB at 20].  The fact that the Debtor does nothing to address this point in his brief is telling.

Instead, the Debtor makes repeated reference to the mistaken belief that a group of lenders – led by Zions Bankcorporation, N.A. ("Zions") – "acknowledge[ed] that Kane's debts were 'business debts'", [RB. at 1, 8, and 15], apparently hoping to create "truth merely be repetition." U.S. v. Hutzell, 217 F.3d 966, 980 (8th Cir. 2000).  But the truth of the matter is neither Zions nor the "group of lenders" affirmatively agreed with the Debtor.  In fact, one need look no further than the motion to convert filed by Zions – that the Debtor for some reason felt the need to supplement the appellate record with as though it matters – where Zions states "[t]he issue here is not whether Kane's debts are or are not consumer debts. This motion accepts at face value, for argument's sake at the moment, the Debtor's claim that they are business debts." SER No. 3 at ¶47, n. 4.  In reality, Zions accepted the same false sworn statement of the Debtor that the Bankruptcy Court did – the Debtor's false statement that his debts were primarily incurred for a business or investment purpose.

More importantly, however, is the fact that the Debtor chose to include such repeated statements in his Responsive Brief.  The Debtor appears to now be arguing

that his debts are "business debts," not "non-consumer" debts as the Bankruptcy Court erroneously found. But of course, such a position has been refuted by the sworn testimony of the Debtor himself. Even more puzzling, is the fact that the Debtor dedicates two pages of his scant argument section citing to authorities that held the "critical factor" and "correct standard" in defining "consumer debt" was whether there was a "production of income," "profit motive," or debt was "incurred for business or other purposes with an eye toward profit." RB at 20-21; see also RB at 23 ("The Bankruptcy Code does not define non-consumer debt. Consumer debt is, however, distinguished from 'non-consumer' debt with the latter being debt incurred with a 'profit motive.'"). And despite the foregoing, later in his brief the Debtor argues that "as the bankruptcy court's decision pointed out, the issue is not consumer versus business, but consumer versus non-consumer. Centennial incorrectly portrays the consumer/business characterization as having only two sides." RB at 33 n. 21. He then argues that "Centennial still fails to understand the distinction between consumer and non-consumer debt," RB at 31, but it would appear that it is the Debtor who is having difficulty reconciling the Bankruptcy Court's decision at the same time the Debtor asks this Court to uphold it.

The Debtor's debts are not primarily business debts – as he falsely stated. Nor are they non-consumer/non-business debts as the Bankruptcy Court erroneously concluded by misapplying the law. Instead, they are debt obligations that the Debtor

7

voluntarily incurred in order to get out of the financial situation he found himself and to pay off preexisting personal, non-business debt obligations. They are primarily consumer debts.

**C.     The Bankruptcy Court's Ruling is Erroneous**

The Debtor does very little defending the Bankruptcy Court's ruling other than simply restating it. Indeed, the Debtor almost entirely ignores Centennial's arguments set forth in its Opening Brief, gratuitously classifying them as "the same failed argument on appeal that it made in the bankruptcy court." But as thoroughly set forth in the Opening Brief, it was the Bankruptcy Court that misapplied the law.

The only argument contained within the Opening Brief that the Debtor specifically addresses is the fact that many courts, in "determining whether a non-business debt is a consumer debt, [] often consider whether the individual voluntarily intended to incur the debt for a personal, family, or household purpose." OB at 16-19; RB at 31. The Debtor initially argues that said argument has been waived. RB at 31. That position, however, is belied by the very authorities the Debtor relies upon to make it. As confirmed in United States v. Carlson, 900 F.2d 1346 (9th Cir. 1990), this Court may consider any issue – regardless if the same was not expressly raised below – if "(1) there are 'exceptional circumstances' why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the

opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." Id. at 1349 (internal citations omitted).  The issue as to whether volition is a factor in determining whether a debt is consumer in nature is purely a legal one and the Debtor makes no argument that he is somehow prejudiced by this Court considering the same.  Moreover, "exceptional circumstances" are present here, as the Debtor swore under oath when he filed his Petition that his debts were purportedly primarily business debts incurred to obtain money for a business or investment or through the operation of the business or investment.  The Debtor did not allege that his debts were non-consumer and non-business debts.  Thus, when Centennial provided evidence that the Debtor's debts were not primarily business debts as the Debtor had previously misstated, the burden should have been placed on the Debtor to come forward and establish that his debts are non-consumer debts other than business debts.  The Debtor still has set forth no argument – other than focusing on the form of the loans themselves – as to why the Centennial Debt and other Non-Residential Bank Debt should be considered non-consumer debt when the undisputed purpose of the debt was to pay down preexisting personal debt obligations. See In re Liegey, No.: 1:09-bk-00661 MDF, 2009 WL 3817902 at *1 (Bankr. M.D. Penn. Nov. 13, 2009) (holding that debtor and his wife's Wells Fargo debt, which was incurred to refinance their home to obtain lower mortgage payments, was a consumer debt); In re Whitelock, 122 B.R. 582, 585-87 (Bankr. D.

9

Utah 1990) (the bankruptcy court found that the debtor's loan incurred to pay off a prior loan used to pay debt owed to the IRS was consumer debt); see also Curtis v. Propel Property Tax Funding, LLC, 915 F.3d 234, 246 (4th Cir. 2019) (holding that a tax payment agreement was a consumer credit transaction notwithstanding the fact it was incurred in order to pay off the underlying property tax liability, because the debt at issue is not the taxes owed to the locality, but the obligation to a third party to repay the third-party's financing of the tax obligation. Thus, it is not the unpaid personal property tax itself, but one level removed, and is the credit obtained to finance the payment of that debt).

The Debtor then argues that the volitional nature of incurring a debt is "meaningless" because not "all voluntarily incurred debt must be consumer debt" as debt incurred with a "profit motive is necessarily one that is taken voluntarily" but otherwise is not consumer debt. RB at 32-33. The Debtor's oversimplification of the argument misses the point. In its Opening Brief, Centennial did not argue that all voluntarily incurred debt must be categorized as consumer debt. To the contrary, it is the volitional nature in which the Debtor incurred the Non-Residential Bank Debt, coupled with the fact that the same was not incurred with a profit motive or business purpose, that requires the Non-Residential Bank Debt to be properly categorized as consumer debt.

**D.      The <u>Garcia</u> Opinion is Inapposite and Unhelpful**

The Debtor classifies the discussion in <u>In re Garcia</u>, 606 B.R. 98 (Bankr. D.N.M. 2019), that was primarily relied upon by the Bankruptcy Court, as "helpful." RB at 24.  However, <u>Garcia</u> dealt with a debt in which the debtor had "mixed" purposes – i.e. to help her father on the one hand, and to secure a profit from doing so on the other. 606 B.R. at 107.  Thus, the court in <u>Garcia</u> needed to determine what the "primary" purpose in incurring the debt at issue was.  The <u>Garcia</u> court ultimately found that "[o]nly one aspect of the transaction weighs in favor of finding that [the endorsement liability is consumer debt] … [is that] Ms. Garcia signed the endorsement agreement in part to help her father."  The court then held that:

> [t]he remaining facts about the transaction, e.g., the unusual, complicated nature of the transaction; the fact that no consumption was involved; the fact that Ms. Garcia negotiated reimbursement, interest, and a 10% joint venture interest in exchange for the endorsement; and the fact that Ms. Garcia obtained substantial tax benefits available only for business interest expense, all tip the balance solidly in favor of concluding that it is not a consumer debt.

<u>Id.</u> at 107-08.  Here, there is no mixed purpose as in <u>Garcia</u>.  Instead, the Debtor's stated purpose in incurring the Non-Residential Bank Debt was to pay down preexisting debt obligations that the Debtor could not even remember what they were for.  Taking on new personal debt to finance old debt is a consumer purpose. See <u>Liegey</u>, 2009 WL 3817902 at *1; <u>Whitelock</u>, 122 B.R. at 585-87 (Bankr. D. Utah 1990); <u>Curtis</u>, 915 F.3d at 246.

11

### E.     The Debtor Fails to Address His Own Burden of Proof

Although identifying an issue on appeal as "[d]id the bankruptcy court hold Centennial to an improper burden of proof," the Debtor largely ignores Centennial's argument contained within its Opening Brief.  In fact, the Debtor does nothing more than cite what he believes to be the "legal standard on a motion to dismiss," RB at 22-23, choosing to travel down a familiar path of failing to directly address Centennial's arguments that are before this Court.

The Debtor makes the point to note that the court in In re Ferreria, 549 B.R. 232 (Bankr. E.D. Cal. 2016) relied upon the bankruptcy decision in In re Palmer, 542 B.R. 289 (Bankr. D. Colo. 2015), that was later reversed by the district court's decision in Palmer v. Laying, 559 B.R. 746 (D. Colo. 2016).  However, what the Debtor fails to note is that the Palmer court, in opining on the bankruptcy court's decision to require the debtor to demonstrate that the student loan debt at issue was primarily incurred for a profit motive, held that "[t]his seems the correct way to proceed, given that it is the party incurring the debt who will, at least initially, be in the best position to explain why he or she incurred that debt."  559 B.R. at 756.

### III.  CONCLUSION

For all the foregoing reasons and all the reasons started in the Opening Brief, this Court should find that the Centennial Debt and other Non-Residential Bank Debt – that was incurred by the Debtor to pay down preexisting personal debt obligations

– is consumer debt, thereby reversing the denial of the Dismissal Motion under § 707(b), and remanding with instructions for the Bankruptcy Court to apply abuse and bad faith analysis that is required under 11 U.S.C. § 707(b)(2) and (b)(3).


DATED:  December 10, 2021		ANTHONY & PARTNERS, LLC


					By:	   */s/ John A. Anthony*			
						John A. Anthony
						Attorneys for CENTENNIAL BANK


DATED:  December 10, 2021		COOPER, WHITE & COOPER LLP


					By:	   */s/ Peter C. Califano*			
						Peter C. Califano
						Attorneys for CENTENNIAL BANK

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with: (a) the type-volume limitations of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g), it contains 3,075 words; and (b) the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) and 8015(a)(6), respectively, because it uses a proportionally-spaced typeface using Microsoft Word in 14 point Times New Roman font.

DATED: December 10, 2021     ANTHONY & PARTNERS, LLC

                                            By:     */s/ John A. Anthony*
                                                  John A. Anthony
                                                  Attorneys for CENTENNIAL BANK

DATED: December 10, 2021     COOPER, WHITE & COOPER LLP

                                            By:     */s/ Peter C. Califano*
                                                  Peter C. Califano
                                                  Attorneys for CENTENNIAL BANK